UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

MARIANNE DRAGONETTE,

     Plaintiff,                             CASE NO.:

vs.

SP BEHAVIORAL, LLC, a Florida Limited Liability
Company, d/b/a SANDY PINES RESIDENTIAL
CENTER FOR CHILDREN & ADOLESCENTS,

     Defendant.
_____/

## COMPLAINT

COMES NOW the Plaintiff, MARIANNE DRAGONETTE (hereinafter "DRAGONETTE"), by and through the undersigned Counsel, and sues the Defendant, SP BEHAVIORAL, LLC, a Florida Limited Liability Company, d/b/a SANDY PINES RESIDENTIAL CENTER FOR CHILDREN & ADOLESCENTS, (hereinafter "SANDY PINES"), and alleges the following:

## JURISDICTION AND VENUE

1.     This is a civil action with damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

2.     This Court is vested with federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under the following: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367.

3.      Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1391(b) because all actions relevant giving rise to this claim arose in this Judicial Circuit.

### ADMINISTRATIVE PREREQUISITES

4.      All conditions precedent to the maintenance of this action have been met.

5.      On or about April 20, 2020, Plaintiff, DRAGONETTE, timely filed a Charge of Discrimination with both the Palm Beach County Office of Equal Opportunity ("OEO") and the U.S. Equal Employment Opportunity Commission ("EEOC").  A copy of said Charge is attached hereto as **Exhibit "A."**

6.      More than 180 days have passed since DRAGONETTE filed her Charge of Discrimination with the Palm Beach County OEO and the EEOC.

7.      On or about December 14, 2020, the EEOC issued a Notice of Right to Sue, acknowledging that more than 180 days had passed since DRAGONETTE's filing of her Charge. A copy of said Notice of Right to Sue is attached hereto as **Exhibit "B."**

8.      This Complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

### PARTIES

9.      Plaintiff, DRAGONETTE is an individual who resided in Martin, Florida, during the time of her employment with SANDY PINES.  At all times herein mentioned, DRAGONETTE was employed by SANDY PINES located at 11301 SE Tequesta Terrace, Tequesta, Florida 33469.

10.      DRAGONETTE was and is a member of a group protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII), the Age Discrimination and Employment

Act of 1967, 29 U.S.C. §§ 621-634 (ADEA), and the Florida Civil Rights Act, Fla. Stat. Ann. § 760.01 (FCRA)'s prohibitions against age discrimination, gender/sexual orientation and preference discrimination, hostile work environment, and retaliation. Namely:

      a. She is a female;

      b. She is a Lesbian;

      c. She was fifty-six (56) years of age at the time she was terminated; and

      d. She suffered an adverse employment action shortly after making a formal complaint regarding the discriminatory treatment she was experiencing in the workplace and SANDY PINES' unlawful business practices.

11.      SANDY PINES is duly authorized and licensed to do business in Palm Beach County, Florida.  At all times material, SANDY PINES was and is engaged in the business of Residential addiction treatment of children and young adults with more than twenty (20) employees.  As such, SANDY PINES is an "employer" as defined by Title VII, the FCRA, and the ADEA.

## GENERAL ALLEGATIONS

12.      DRAGONETTE was employed at SANDY PINES on a continuous basis for twenty-seven (27) years from 1992 through November 14, 2019.

13.      In 1992, DRAGONETTE was hired by SANDY PINES as a Certified Mental Health Tech. DRAGONETTE was employed in this capacity until approximately 2007, when DRAGONETTE became a Certified Addiction Counselor for SANDY PINES and was responsible for providing addiction counseling to adolescents and children who were residents at the facility. Additionally, DRAGONETTE served as the ROPES Supervisor for SANDY PINES.

14.     During her employment with SANDY PINES, DRAGONETTE was the only Certified Addiction Counselor at SANDY PINES until sometime in 2017. Since that time, SANDY PINES hired one (1)Therapists and one (1) MSCAP Certified Addiction Professional, both significantly younger than DRAGONETTE. Neither one had the extensive experience and hands-on training that DRAGONETTE possessed and DRAGONETTE provided them with her experience and knowledge of the Chemical Dependency track at SANDY PINES.

15.     By all accounts, DRAGONETTE excelled at her position, having received a single disciplinary warning for an action she self-reported throughout the twenty-seven (27) years that she was employed by SANDY PINES. Notwithstanding, on November 14, 2019, SANDY PINES terminated DRAGONETTE not as a result of her performance but due to improper discriminatory and illegal reasons.

### SANDY PINES' Gender/Sexual Orientation and Preference Discrimination against DRAGONETTE

16.     While employed with SANDY PINES, DRAGONETTE was in a lesbian relationship with her female partner and co-worker at SANDY PINES, Amy MacDowell ("MacDowell"), until the relationship ended in May 2019. Beginning in 2014, DRAGONETTE's sexual orientation became a cause for constant workplace gossip and continued questions by other employees. The constant intrusion into DRAGONETTE's personal relationship and sexual orientation regularly made her feel uncomfortable by certain co-workers and management at SANDY PINES. In fact, management at SANDY PINES, though fully aware of the inappropriate intrusion into DRAGONETTE's personal life, not only allowed the unfair treatment to persist, but actively participated in the banter which created an uncomfortable working atmosphere for DRAGONETTE.

4

17.     Beginning in May 2019 and continuing until DRAGONETTE's termination in November 2019, Monge Codio ("Codio"), the CEO and Managing Director at SANDY PINES, made comments directly to DRAGONETTE regarding her sexuality. Almost immediately after DRAGONETTE separated from her partner, Codio approached her requesting information about the "split up". DRAGONETTE did not respond to Codio's inquiries because she felt it was inappropriate to discuss her personal relationship with a supervisor in and around the office.

18.     On a second occasion, Codio directly questioned DRAGONETTE's sexuality by asking her what she found attractive about women that she couldn't get from a man. DRAGONETTE again did not respond to Codio's inappropriate question about her sexual orientation.

19.     Within weeks of this comment by Codio, he again approached DRAGONETTE asking if she had found a girlfriend yet. Again, DRAGONETTE did not respond to Codio's inappropriate question about her sexual orientation.

20.     In October 2019, Codio again approached DRAGONETTE. During this encounter, Codio inquired as to how the breakup between her and MacDowell was affecting their son. Codio went on to ask, "Do you two treat this like normal people?". DRAGONETTE responded to Codio by saying to him that she didn't appreciate his comments in the last few months and told him it was none of his or anyone's business.

21.     Within a few weeks of DRAGONETTE finally responding to Codio's persistent, inappropriate, and insensitive questions and statements, on November 14, 2019, DRAGONETTE was inexplicably terminated.

<u>SANDY PINES' Age Discrimination against DRAGONETTE</u>

22.     After approximately ten (10) years of having DRAGONETTE serve as SANDY PINES' only Certified Addiction Counselor, in 2017, SANDY PINES began to hire additional Certified Addiction Counselors. Specifically, SANDY PINES hired two (2) other Certified Addiction Counselors, both significantly younger than DRAGONETTE, and neither of which had the extensive experience or hands on training that DRAGONETTE possessed.

23.     Following SANDY PINES' hiring of the two (2) other Certified Addiction Counselors, DRAGONETTE was tasked with training each of the new counselors. DRAGONETTE was ultimately phased out of her employment after training her younger successors.

24.     After the new counselors had fully assumed their roles for SANDY PINES, approximately three to four months prior to her termination, DRAGONETTE's position as ROPES Supervisor was moved from the Social Service Department to the Recreational Therapy Department. As a consequence of the department change, DRAGONETTE reported to a new supervisor, Michelle Murray ("Murray").

25.     Upon the transfer of the ROPES department, Murray requested that DRAGONETTE provide all ROPES material and guidelines to her. As DRAGONETTE had developed most of this material herself, it took time to for DRAGONETTE to compile all of the information. Murray became agitated and angry with DRAGONETTE that the transfer was not immediate.

26.     Just days after providing this information to Murray, on November 14, 2019, DRAGONETTE was inexplicably terminated.

SANDY PINES' Retaliation against DRAGONETTE

27.     As a Certified Addiction Counselor, DRAGONETTE provided addiction counseling to adolescents and children during her tenure at Sandy Pines. Between the summer of 2019 and her termination on November 14, 2019, she began being approached more consistently by adolescent and child residents at SANDY PINES who expressed concern about going to group sessions. Based on her knowledge as a Certified Addiction Counselor and as an employee for SANDY PINES since 1992, DRAGONETTE advised these residents that it was within their rights not to attend group sessions.

28.     DRAGONETTE, at times, provided the residents with a copy of his or her rights, as well as a copy of any "write-up" that may have been placed in their file for not attending group sessions. The residents were being threatened with "write-ups" if they did not attend group sessions, yet nowhere in SANDY PINES' policies was there anything in writing which indicated that a resident could be "written-up" for not attending group.

29.     Initially, the Director of Social Services and DRAGONETTE's supervisor at SANDY PINES, Amanda Stone ("Stone"), told DRAGONETTE that she had no problem with DRAGONETTE advising the residents of their respective rights. Staff at the facility, however, became upset with the role DRAGONETTE took on with these residents.

30.     After management advised DRAGONETTE that the staff was upset with DRAGONETTE because of her advising of these residents, DRAGONETTE instead advised the residents that consulted her that a Resident Advocate at SANDY PINES, Heather Lacharite, was at the facility and told the residents to write down their respective concerns and give them to Ms. Lacharite.

31.     Because DRAGONETTE had advised the residents of their respective rights at SANDY PINES, however, DRAGONETTE was subjected to retaliation by the management at SANDY PINES and consequently terminated for advocating for the residents in the facility.

SANDY PINES' Unlawful Termination of DRAGONETTE

32.     On November 14, 2019, during her regular work hours, DRAGONETTE was summoned into a meeting where SANDY PINES' Human Resources supervisor, Jessica Stewart ("Stewart"), and Director Stone were present.

33.     Stewart explained to DRAGONETTE that the reason she was being terminated was that SANDY PINES was going in a different direction because they were eliminating the ROPES Group—only one facet of the job DRAGONETTE performed at SANDY PINES. Notably, the ROPES Group was never eliminated by SANDY PINES, but rather, it was transferred departments from the social service department to a recreational therapy department. Stone offered no information or input.

34.     When DRAGONETTE asked for further reasoning as to why she was terminated, she was told that the company was going in a different direction. She was told to turn in her badge and keys without any further explanation and was not allowed to return to her office to retrieve any of her personal belongings.

35.     At the same time as she was being terminated, Michelle Guiller, Lead Therapist at the facility, went to DRAGONETTE's former partner, MacDowell, and told her they were terminating DRAGONETTE. DRAGONETTE subsequently contacted MacDowell, who brought out DRAGONETTE's purse and gym bag, while the rest of her personal belongings and effects remained in her office.

36.     SANDY PINE's termination of DRAGONETTE was not as a result of her performance but due to improper discriminatory and illegal reasons. Specifically, SANDY PINE terminated DRAGONETTE as a result of her age, gender/sexual orientation and preference, and in retaliation for her advocacy for residents and her reporting of discriminatory treatment against her.

### COUNT I –VIOLATION OF TITLE VII – GENDER/SEXUAL ORIENTATION AND PREFERENCE DISCRIMINATION

37.     Plaintiff DRAGONETTE adopts and incorporates by reference the allegations in Paragraphs 1 through 21 and 32 through 36 of this Complaint as if fully set forth herein.

38.     DRAGONETTE is a member of a protected class of lesbian female citizens.

39.     At all times necessary, DRAGONETTE was qualified to perform her duties as a Certified Addiction Counselor and ROPES Supervisor.

40.     During the course of DRAGONETTE's employment with SANDY PINES, DRAGONETTE was subjected to a discriminatory, hostile, and offensive work environment because of her gender (female), and her sexual orientation and preference (lesbian), as more fully described in the General Allegations.

41.     The offensive and discriminatory conduct referred to in the General Allegations was offensive to DRAGONETTE and would be offensive to a reasonable person.

42.     DRAGONETTE was subjected to the conduct referred to in the General Allegations of this Complaint because she is a lesbian female.

43.     The CEO and managing director of SANDY PINES, Monge Codio, directed much of the conduct referred to in this Complaint at DRAGONETTE.

44.     DRAGONETTE's termination constituted an adverse employment action against her which was causally related to DRAGONETTE's gender (female) and sexual orientation and preference (lesbian).

45.     Similarly situated male and female employees who were not of DRAGONETTE's sexual orientation and preference were treated more favorably by SANDY PINES and were not forced to endure the inappropriate, insensitive, and sexually charged actions of the SANDY PINES' CEO as referred to in the General Allegations of this Complaint.

46.     Any alleged nondiscriminatory reason for this treatment of DRAGONETTE by SANDY PINES is a mere pretext for the actual reason for discriminating against her based on her gender and sexual orientation and preference.

47.     As a direct and proximate result of the foregoing, DRAGONETTE has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and other forms of damage.

48.     What is more, the aforementioned actions of SANDY PINES were willful, wanton, intentional, and with malice or with reckless indifference to DRAGONETTE's statutorily protected rights and the consequences of such actions, such that DRAGONETTE is entitled to punitive damages.

49.     As a result of the deprivations of rights at the hands of SANDY PINES, DRAGONETTE has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to 42 U.S.C. § 2000e-5k and otherwise by law.

## COUNT II – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT –
## GENDER/SEXUAL ORIENTATION AND PREFERENCE DISCRIMINATION

50.     Plaintiff DRAGONETTE adopts and incorporates by reference the allegations in Paragraphs 1 through 21 and 32 through 36 of this Complaint as if fully set forth herein.

51.     At all times material hereto, SANDY PINES failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

52.     SANDY PINES is an "employer" as defined by § 760.09(7) of the Florida Statutes.

53.     DRAGONETTE is a member of a protected class of lesbian female citizens.

54.     At all times necessary, DRAGONETTE was qualified to perform her duties as a Certified Addiction Counselor and ROPES Supervisor.

55.     During the course of DRAGONETTE's employment with SANDY PINES, DRAGONETTE was subjected to a discriminatory, hostile, and offensive work environment because of her gender (female) and sexual orientation and preference (lesbian), as more fully described in the General Allegations.

56.     The offensive and discriminatory conduct referred to in the General Allegations was offensive to DRAGONETTE and would be offensive to a reasonable person.

57.     DRAGONETTE was subjected to the conduct referred to in the General Allegations of this Complaint because she is a lesbian female.

58.     The CEO and managing director of SANDY PINES, Monge Codio, directed much of the conduct referred to in this Complaint at DRAGONETTE.

59.     DRAGONETTE's termination constituted an adverse employment action against her which was causally related to DRAGONETTE's gender (female) and sexual orientation and preference (lesbian).

60.     Similarly situated male and female employees who were not of DRAGONETTE's sexual orientation and preference were treated more favorably by SANDY PINES and were not forced to endure the inappropriate, insensitive, and sexually charged actions of the SANDY PINES' CEO as referred to in the General Allegations of this Complaint.

61.     Any alleged nondiscriminatory reason for this treatment of DRAGONETTE by SANDY PINES is a mere pretext for the actual reason for discriminating against her based on her gender and sexual orientation and preference.

62.     As a direct and proximate result of the foregoing, DRAGONETTE has suffered and will continue to suffer lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and other forms of damage.

63.     What is more, the aforementioned actions of SANDY PINES were willful, wanton, intentional, and with malice or with reckless indifference to DRAGONETTE's statutorily protected rights and the consequences of such actions, such that DRAGONETTE is entitled to punitive damages.

64.     DRAGONETTE has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this case.

## COUNT III– AGE DISCRIMINATION IN VIOLATION OF
## THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §§ 621-634

65.     Plaintiff DRAGONETTE adopts and incorporates by reference the allegations in Paragraphs 1 through 15, 22 through 26, and 32 through 36 of this Complaint as if fully set forth herein.

66.     Under the ADEA, "it shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [AND] (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623.

67.     SANDY PINES is an "employer" as defined by the ADEA.

68.     DRAGONETTE was fifty-six-years-old (56) and qualified for her position with SANDY PINES when her employment was terminated.

69.     After approximately ten (10) years of having DRAGONETTE serve as SANDY PINES' only Certified Addiction Counselor, in 2017, SANDY PINES began to hire additional Certified Addiction Counselors. Specifically, SANDY PINES hired two (2) other Certified Addiction Counselors, both significantly younger than DRAGONETTE, and neither of which had the extensive experience or hands on training that DRAGONETTE possessed.

70.     At the time of her termination, DRAGONETTE was the oldest and most tenured of all the Certified Addiction Counselors at SANDY PINES, with a large disparity in age between her and her two successors. In the time leading up to her dismissal, DRAGONETTE not only saw significantly younger addiction counselors without her practical experience being hired, but she was required to train the individuals who subsequently replaced her.

71.     Additionally, during DRAGONETTE's twenty-seven (27) years of service at SANDY PINES, she amassed a significant amount of training materials and guidelines with respect to her role as ROPES Supervisor. Following a department change for DRAGONETTE's position as ROPES Supervisor and DRAGONETTE's transfer to the supervision of Michelle Murray, DRAGONETTE was requested to provide this documentation to Murray. DRAGONETTE was inexplicably terminated within days of providing the documents to Murray.

72.     By directing DRAGONETTE to turn over the documentation that she had compiled over the course of her twenty-seven (27) years at SANDY PINES and then terminating her employment, SANDY PINES clearly signaled a move to a younger staff who would benefit from the knowledge and experience of the oldest Certified Addiction Counselor.

73.     SANDY PINES' unlawful employment practices, complained of above, deprived DRAGONETTE of her statutory rights under the ADEA.

74.     SANDY PINES and its employees/agents discriminated against DRAGONETTE with respect to her employment because of her age by subjecting DRAGONETTE to an insulting work environment and by terminating her based on her age.

75.     DRAGONETTE suffered damages as a result of SANDY PINES' unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

76.     What is more, SANDY PINES willfully violated DRAGONETTE's rights under the ADEA and, as a result, is liable for liquidated damages.

77.     DRAGONETTE has been required to retain the legal services of the undersigned Counsel to enforce her rights under the ADEA and is required to pay her attorney a reasonable fee for services rendered in this case.

## COUNT IV – AGE DISCRIMINATION IN VIOLATION OF
## THE FLORIDA CIVIL RIGHTS ACT OF 1992

78.     Plaintiff DRAGONETTE adopts and incorporates by reference the allegations in Paragraphs 1 through 15, 22 through 26, and 32 through 36 of this Complaint as if fully set forth herein.

79.     At all times material hereto, SANDY PINES failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

80.     SANDY PINES is an "employer" as defined by § 760.09(7) of the Florida Statutes.

81.     At the time of her termination, DRAGONETTE was a fifty-six (56) year old female who was guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

82.     At all times necessary, DRAGONETTE was qualified to perform her duties as a Certified Addiction Counselor and ROPES Supervisor.

83.     After approximately ten (10) years of having DRAGONETTE serve as SANDY PINES' only Certified Addiction Counselor, in 2017, SANDY PINES began to hire additional Certified Addiction Counselors. Specifically, SANDY PINES hired two (2) other Certified Addiction Counselors, both significantly younger than DRAGONETTE, and neither of which had the extensive experience or hands on training that DRAGONETTE possessed.

84.     At the time of her termination, DRAGONETTE was the oldest and most tenured of all the Certified Addiction Counselors at SANDY PINES, with a large disparity in age between

her and her two successors. In the time leading up to her dismissal, DRAGONETTE not only saw significantly younger addiction counselors without her practical experience being hired, but she was required to train the individuals who subsequently replaced her.

85.    Additionally, during DRAGONETTE's twenty-seven (27) years of service at SANDY PINES, she amassed a significant amount of training materials and guidelines with respect to her role as ROPES Supervisor. Following a department change for DRAGONETTE's position as ROPES Supervisor and DRAGONETTE's transfer to the supervision of Michelle Murray, DRAGONETTE was requested to provide this documentation to Murray. DRAGONETTE was inexplicably terminated within days of providing the documents to Murray.

86.    By directing DRAGONETTE to turn over the documentation that she had compiled over the course of her twenty-seven (27) years at SANDY PINES and then terminating her employment, SANDY PINES clearly signaled a move to a younger staff who would benefit from the knowledge and experience of the oldest Certified Addiction Counselor.

87.    SANDY PINES' unlawful employment practices, complained of above, deprived DRAGONETTE of her statutory rights under the FCRA.

88.    SANDY PINES and its employees/agents discriminated against DRAGONETTE with respect to her employment because of her age by subjecting DRAGONETTE to an insulting work environment, and by terminating her based on her age.

89.    DRAGONETTE's termination constituted an adverse employment action against her which was causally related to DRAGONETTE's age.

90.    Similarly situated male and female employees who were not of DRAGONETTE's age were treated more favorably by SANDY PINES and were not forced to train their younger

successor employees and were not terminated because of their age as referred to in the General Allegations of this Complaint.

91.     As a direct and proximate result of the foregoing, DRAGONETTE has suffered and continues to suffer embarrassment, humiliation, emotional distress, economic losses, and other forms of damage.

92.     Any alleged nondiscriminatory reason for this treatment of DRAGONETTE by SANDY PINES is a mere pretext for the actual reason for discriminating against her based on her age.

93.     What is more, the aforementioned actions of SANDY PINES were willful, wanton, intentional, and with malice or with reckless indifference to DRAGONETTE's statutorily protected rights and the consequences of such actions, such that DRAGONETTE is entitled to punitive damages.

94.     DRAGONETTE has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this case.

### COUNT V– RETALIATION BASED ON GENDER IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

95.     Plaintiff DRAGONETTE adopts and incorporates by reference the allegations in Paragraphs 1 through 21 and 27 through 36 of this Complaint as if fully set forth herein.

96.     The FCRA, Fla. Stat. Chapter 760.10(1)(a), reads in applicable part, as follows: "It is an unlawful employment practice for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

97.     The FCRA, Fla. Stat. Chapter 760.10(7), reads in applicable part, as follows: "It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under [Section 760.10]."

98.     SANDY PINES is an "employer" as defined by § 760.09(7) of the Florida Statutes.

99.     At the time of her discharge, DRAGONETTE was a fifty-six-year-old lesbian female who was guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

100.    DRAGONETTE engaged in a statutorily protected expression, namely she advised the CEO and managing director of SANDY PINES, Monge Codio, that she felt his constant questioning and intrusion into her personal life and sexual orientation was inappropriate and none of his or anyone's business.

101.    Additionally, between the summer of 2019 and her termination on November 14, 2019, DRAGONETTE, with the initial approval of the Director of Social Services, Amanda Stone, regularly advocated for adolescent and child residents at SANDY PINES and advised them of their respective rights. Notwithstanding Stone's approval, DRAGONETTE was advised that many members of the staff at SANDY PINES were upset with her because of the role DRAGONETTE took on with these residents.

102.    Thereafter, on November 14, 2019, just shortly after DRAGONETTE's statutorily protected expression, DRAGONETTE was inexplicably terminated from her employment with SANDY PINES.

103.    A causal connection exists between DRAGONETTE's complaints of discrimination and harassment and her advocacy for residents of SANDY PINES, i.e. her

statutorily protected expression, and the adverse employment action faced by DRAGONETTE, namely her termination.

104.    SANDY PINES violated the FCRA when it terminated DRAGONETTE following her complaints of harassment and hostile work environment resulting from gender/sexual orientation and preference discrimination and her advocacy for residents of SANDY PINES.

105.    As a direct and proximate result of SANDY PINES' conduct and its employees' actions, DRAGONETTE has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, life insurance, and disability insurance, all of which she would have continued to receive had she not been unlawfully terminated.

106.    What is more, the unlawful employment practices complained of above committed by SANDY PINES were willful, wanton, intentional and with malice or with reckless indifference to DRAGONETTE's statutorily protected rights, such that DRAGONETTE is entitled to punitive damages.

107.    DRAGONETTE has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this case.

### COUNT VI – RETALIATION BASED ON GENDER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

108.    Plaintiff DRAGONETTE adopts and incorporates by reference the allegations in Paragraphs 1 through 21 and 27 through 36 of this Complaint as if fully set forth herein.

109.    Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because

he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 et seq.

110.    DRAGONETTE is a fifty-six-year-old lesbian female who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

111.    DRAGONETTE engaged in a statutorily protected expression, namely she advised the CEO and managing director of SANDY PINES, Monge Codio, that she felt his constant questioning and intrusion into her personal life and sexual orientation was inappropriate and none of his or anyone's business.

112.    Additionally, between the summer of 2019 and her termination on November 14, 2019, DRAGONETTE, with the initial approval of the Director of Social Services, Amanda Stone, regularly advocated for adolescent and child residents at SANDY PINES and advised them of their respective rights. Notwithstanding Stone's approval, DRAGONETTE was advised that many members of the staff at SANDY PINES were upset with her because of the role DRAGONETTE took on with these residents.

113.    Thereafter, on November 14, 2019, just shortly after DRAGONETTE's statutorily protected expression, DRAGONETTE was inexplicably terminated from her employment with SANDY PINES.

114.    A causal connection exists between DRAGONETTE's complaints of discrimination and harassment and her advocacy for residents of SANDY PINES, i.e. her statutorily protected expression, and the adverse employment action faced by DRAGONETTE, namely her termination.

115.    As a direct and proximate result of SANDY PINES' conduct and its employees' actions, DRAGONETTE has suffered irreparable harm through her loss of gainful employment

and through the loss of valuable employment benefits, including group health insurance, life insurance, and disability insurance all of which she would have continued to receive had she not been unlawfully terminated.

116.    What is more, the unlawful employment practices complained of above committed by SANDY PINES were willful, wanton, intentional and with malice or with reckless indifference to DRAGONETTE's statutorily protected rights, such that DRAGONETTE is entitled to punitive damages.

117.    DRAGONETTE has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this case.

### COUNT VII – HOSTILE WORK ENVIRONMENT BASED ON GENDER/SEXUAL ORIENTATION AND PREFERENCE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

118.    Plaintiff DRAGONETTE adopts and incorporates by reference the allegations in Paragraphs 1 through 21 and 32 through 36 of this Complaint as if fully set forth herein.

119.    Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e et seq.

120.    The phrase "terms, conditions, or privileges of employment" as included in 42 U.S.C. § 2000e et seq. evidences a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a

discriminatorily hostile or abusive environment.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

121.    A hostile work environment exists, in violation of 42 U.S.C. Sect. 2000(e), et seq., when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

122.    At the time of her termination, DRAGONETTE was a fifty-six-year-old lesbian female who was guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

123.    During the course and scope of DRAGONETTE's employment, SANDY PINES and its management level employees subjected DRAGONETTE to unwelcome harassment because of her gender/sexual orientation and preference from the beginning of her employment through and including her termination.

124.    Specifically, on several occasions Monge Codio, the CEO and Managing Director at SANDY PINES, made inappropriate and persistent comments directly to DRAGONETTE regarding her sexual orientation.

125.    The harassment that SANDY PINES inflicted upon DRAGONETTE was sufficiently severe and pervasive to alter the terms and conditions of her employment with SANDY PINES and create a discriminatorily abusive working environment, such that DRAGONETTE constantly felt uncomfortable, intruded upon, and discriminated against.

126.     The conduct inflicted upon DRAGONETTE was so severe or pervasive that it created an environment where a reasonable person would find it hostile or abusive.

127.     DRAGONETTE perceived the work environment at SANDY PINES as abusive.

128.     The harassment occurred frequently, was humiliating, and unreasonably interfered with DRAGONETTE's ability to perform her job responsibilities with SANDY PINES.

129.     SANDY PINES is liable because its supervisory personnel were responsible for the discriminatory actions complained of, which actions were in violation of law, and SANDY PINES took no corrective action to stop and/or prevent said harassment.

130.     In fact, management at SANDY PINES, though fully aware of the inappropriate intrusion into DRAGONETTE's personal life, not only allowed the unfair treatment to persist, but actively participated in the banter which created the hostile working atmosphere for DRAGONETTE.

131.     SANDY PINES knew or should have known about their discriminating actions, as listed above, and SANDY PINES failed to take prompt remedial action, in violation of Title VII of the Civil Rights Act.

132.     As a direct and proximate result of SANDY PINES' conduct and its employees' actions, DRAGONETTE has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, life insurance, and disability insurance, all of which she would have continued to receive had she not been unlawfully terminated.

133.     What is more, the unlawful employment practices complained of above committed by SANDY PINES's were willful, wanton, intentional and with malice or with reckless

indifference to DRAGONETTE's statutorily protected rights, such that DRAGONETTE is entitled to punitive damages.

134.    DRAGONETTE has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this case.

## COUNT VIII– HOSTILE WORK ENVIRONMENT BASED ON GENDER/SEXUAL ORIENTATION AND PREFERENCE IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

135.    Plaintiff DRAGONETTE adopts and incorporates by reference the allegations in Paragraphs 1 through 21 and 32 through 36 of this Complaint as if fully set forth herein.

136.    A hostile work environment claim arising from the FCRA is analyzed under the same laws applicable to Title VII claims.

137.    A hostile work environment exists, in violation of Fla. Stat. Chapter 760.10(1)(a), when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

138.    At the time of her termination, DRAGONETTE was a fifty-six-year-old lesbian female who was guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

139.    During the course and scope of DRAGONETTE's employment, SANDY PINES and its management level employees subjected DRAGONETTE to unwelcome harassment

because of her gender/sexual orientation and preference from the beginning of her employment through and including her termination.

140.    Specifically, on several occasions Monge Codio, the CEO and Managing Director at SANDY PINES, made inappropriate and persistent comments directly to DRAGONETTE regarding her sexual orientation.

141.    The harassment that SANDY PINES inflicted upon DRAGONETTE was sufficiently severe and pervasive to alter the terms and conditions of her employment with SANDY PINES and create a discriminatorily abusive working environment, such that DRAGONETTE constantly felt uncomfortable, intruded upon, and discriminated against.

142.    The conduct inflicted upon DRAGONETTE was so severe or pervasive that it created an environment where a reasonable person would find it hostile or abusive.

143.    DRAGONETTE perceived the work environment at SANDY PINES as abusive.

144.    The harassment occurred frequently, was humiliating, and unreasonably interfered with DRAGONETTE's ability to perform her job responsibilities with SANDY PINES.

145.    SANDY PINES is liable because its supervisory personnel were responsible for the discriminatory actions complained of, which actions were in violation of law, and SANDY PINES took no corrective action to stop and/or prevent said harassment.

146.    In fact, management at SANDY PINES, though fully aware of the inappropriate intrusion into DRAGONETTE's personal life, not only allowed the unfair treatment to persist, but actively participated in the banter which created the hostile working atmosphere for DRAGONETTE.

147.    SANDY PINES knew or should have known about their discriminating actions, as listed above, and SANDY PINES failed to take prompt remedial action, in violation of the FCRA.

148.    As a direct and proximate result of SANDY PINES' conduct and its employees' actions, DRAGONETTE has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, life insurance, and disability insurance, all of which she would have continued to receive had she not been unlawfully terminated.

149.    What is more, the unlawful employment practices complained of above committed by SANDY PINES's were willful, wanton, intentional and with malice or with reckless indifference to DRAGONETTE's statutorily protected rights, such that DRAGONETTE is entitled to punitive damages.

150.    DRAGONETTE has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this case.

## COUNT IX – HOSTILE WORK ENVIRONMENT BASED ON AGE IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §§ 621 ET SEQ.

151.    Plaintiff DRAGONETTE adopts and incorporates by reference the allegations in Paragraphs 1 through 15, 22 through 26, and 32 through 36 of this Complaint as if fully set forth herein.

152.    A hostile work environment exists, in violation of 29 U.S.C. § 623(a), when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

153. At the time of her termination, DRAGONETTE was a fifty-six-year-old female who was guaranteed specific civil rights under the ADEA.

154. During the course and scope of DRAGONETTE's employment, SANDY PINES and its management level employees subjected DRAGONETTE to unwelcome harassment because of her age from the beginning of her employment through and including her termination.

155. Specifically, after approximately ten (10) years of having DRAGONETTE serve as SANDY PINES' only Certified Addiction Counselor, in 2017, SANDY PINES began to hire two (2) other Certified Addiction Counselors, both significantly younger than DRAGONETTE, and neither of which had the extensive experience or hands on training that DRAGONETTE possessed. DRAGONETTE was required to train each of the new counselors and was terminated shortly thereafter.

156. Additionally, DRAGONETTE's position as ROPES Supervisor was moved from the Social Service Department to the Recreational Therapy Department, where DRAGONETTE was required to provide her new supervisor with all of the material and guidelines which DRAGONETTE had developed during her twenty-seven (27) years employed by SANDY PINES. Within days of providing this information to her new supervisor, DRAGONETTE was terminated.

157. The harassment that SANDY PINES inflicted upon DRAGONETTE was sufficiently severe and pervasive to alter the terms and conditions of her employment with SANDY PINES and create a discriminatorily abusive working environment, such that DRAGONETTE constantly felt discriminated against and her employment threatened.

158. The conduct inflicted upon DRAGONETTE was so severe or pervasive that it created an environment where a reasonable person would find it hostile or abusive.

159. DRAGONETTE perceived the work environment at SANDY PINES as abusive.

160.    The harassment occurred frequently, was humiliating, and unreasonably interfered with DRAGONETTE's ability to perform her job responsibilities with SANDY PINES.

161.    SANDY PINES is liable because its supervisory personnel were responsible for the discriminatory actions complained of, which actions were in violation of law, and SANDY PINES took no corrective action to stop and/or prevent said harassment.

162.    In fact, management at SANDY PINES took an active role in the discriminatory actions against DRAGONETTE, specifically requiring DRAGONETTE to train her younger successors as Certified Addiction Counselors and phasing DRAGONETTE out of her role as ROPES Supervisor.

163.    SANDY PINES knew or should have known about their discriminating actions, as listed above, and SANDY PINES failed to take prompt remedial action, in violation of the ADEA.

164.    As a direct and proximate result of SANDY PINES's conduct and its employees' actions, DRAGONETTE has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, life insurance, and disability insurance, all of which she would have continued to receive had she not been unlawfully terminated.

165.    What is more, SANDY PINES willfully violated DRAGONETTE's rights under the ADEA and, as a result, is liable for liquidated damages.

166.    DRAGONETTE has been required to retain the legal services of the undersigned Counsel to enforce her rights under the ADEA and is required to pay her attorney a reasonable fee for services rendered in this case.

## COUNT X – HOSTILE WORK ENVIRONMENT BASED ON AGE IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

167.    Plaintiff DRAGONETTE adopts and incorporates by reference the allegations in Paragraphs 1 through 15, 22 through 26, and 32 through 36 of this Complaint as if fully set forth herein.

168.    A hostile work environment exists, in violation of Fla. Stat. Chapter 760.10(1)(a), when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

169.    At the time of her termination, DRAGONETTE was a fifty-six-year-old female who was guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

170.    During the course and scope of DRAGONETTE's employment, SANDY PINES and its management level employees subjected DRAGONETTE to unwelcome harassment because of her age from the beginning of her employment through and including her termination.

171.    Specifically, after approximately ten (10) years of having DRAGONETTE serve as SANDY PINES' only Certified Addiction Counselor, in 2017, SANDY PINES began to hire two (2) other Certified Addiction Counselors, both significantly younger than DRAGONETTE, and neither of which had the extensive experience or hands on training that DRAGONETTE possessed. DRAGONETTE was required to train each of the new counselors and was terminated shortly thereafter.

172.    Additionally, DRAGONETTE's position as ROPES Supervisor was moved from the Social Service Department to the Recreational Therapy Department, where DRAGONETTE

29

was required to provide her new supervisor with all of the material and guidelines which DRAGONETTE had developed during her twenty-seven (27) years employed by SANDY PINES. Within days of providing this information to her new supervisor, DRAGONETTE was terminated.

173.    The harassment that SANDY PINES inflicted upon DRAGONETTE was sufficiently severe and pervasive to alter the terms and conditions of her employment with SANDY PINES and create a discriminatorily abusive working environment, such that DRAGONETTE constantly felt discriminated against and her employment threatened.

174.    The conduct inflicted upon DRAGONETTE was so severe or pervasive that it created an environment where a reasonable person would find it hostile or abusive.

175.    DRAGONETTE perceived the work environment at SANDY PINES as abusive.

176.    The harassment occurred frequently, was humiliating, and unreasonably interfered with DRAGONETTE's ability to perform her job responsibilities with SANDY PINES.

177.    SANDY PINES is liable because its supervisory personnel were responsible for the discriminatory actions complained of, which actions were in violation of law, and SANDY PINES took no corrective action to stop and/or prevent said harassment.

178.    In fact, management at SANDY PINES took an active role in the discriminatory actions against DRAGONETTE, specifically requiring DRAGONETTE to train her younger successors as Certified Addiction Counselors and phasing DRAGONETTE out of her role as ROPES Supervisor.

179.    SANDY PINES knew or should have known about their discriminating actions, as listed above, and SANDY PINES failed to take prompt remedial action, in violation of the FCRA.

180.    As a direct and proximate result of SANDY PINES's conduct and its employees' actions, DRAGONETTE has suffered irreparable harm through her loss of gainful employment

and through the loss of valuable employment benefits, including group health insurance, life insurance, and disability insurance, all of which she would have continued to receive had she not been unlawfully terminated.

181.    What is more, the unlawful employment practices complained of above committed by SANDY PINES's were willful, wanton, intentional and with malice or with reckless indifference to DRAGONETTE's statutorily protected rights, such that DRAGONETTE is entitled to punitive damages.

182.    DRAGONETTE has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this case.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, MARIANNE DRAGONETTE, demands judgment against Defendant, SP BEHAVIORAL, LLC, a Florida Limited Liability Company, d/b/a SANDY PINES RESIDENTIAL CENTER FOR CHILDREN & ADOLESCENTS, and requests the following relief:

1. Enter judgment in favor of DRAGONETTE for SP BEHAVIORAL, LLC, a Florida Limited Liability Company, d/b/a SANDY PINES RESIDENTIAL CENTER FOR CHILDREN & ADOLESCENTS' violations of Title VII and the FCRA.

2. Award DRAGONETTE actual damages suffered;

3. Award back pay and value of lost employment benefits to DRAGONETTE;

4. Award front pay to DRAGONETTE for the years she would have worked absent SP BEHAVIORAL, LLC, a Florida Limited Liability Company, d/b/a SANDY PINES RESIDENTIAL CENTER FOR CHILDREN & ADOLESCENTS' discriminatory treatment;

5.  Enter judgment in favor of DRAGONETTE for compensatory damages for the embarrassment, anxiety, humiliation, and emotional distress DRAGONETTE has suffered and continues to suffer;

6.  Award DRAGONETTE punitive damages;

7.  Award to DRAGONETTE all costs and reasonable attorney's fees incurred in connection with this action;

8.  Award prejudgment interest on all monetary recovery obtained;

9.  An injunction permanently enjoining SP BEHAVIORAL, LLC, a Florida Limited Liability Company, d/b/a SANDY PINES RESIDENTIAL CENTER FOR CHILDREN & ADOLESCENTS, its officers, agents, employees, assigns and all persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of religion; and

10. Grant such additional or alternative relief as may appear to the court to be just and equitable.

## JURY TRIAL DEMAND

Plaintiff, MARIANNE DRAGONETTE, demands a trial by jury on all issues so triable.

Dated January 14, 2021.

Sconzo Law Office, P.A.
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: /s/ Gregory S. Sconzo
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
JOSEPH G. SCONZO, ESQUIRE
Florida Bar No.: 0508720
Primary Email: greg@sconzolawoffice.com
Primary Email: joe@sconzolawoffice.com